UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK  

For Online Publication Only

------------------------------------------------------------------------X  
JOHN MANGINO,

                                                                            **ORDER**  
                                  Plaintiff,          12-CV-5424 (JMA) (ARL)

      -against-

TOWN OF BABYLON and ANN MARIE JONES,

                                  Defendants.  
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

      This Order addresses issues raised at the November 13, 2024, pretrial conference and the parties' subsequent letters.

**A.  Computer Printout**

      The Court clarifies its ruling with respect to items on the computer printout regarding Plaintiff's properties.  Violations that Defendant Town of Babylon (the "Town") issued concerning garbage on the properties would be irrelevant to the extent those violations occurred after 2009.  However, violations concerning garbage from 2009 and earlier are relevant because they could indicate that the Town had reason to believe that the properties were being rented when Plaintiff did not have rental permits.

**B.  Substitute Service and Judge Santorelli's August 10, 2009 Decision**

      Plaintiff's request to exclude Judge Santorelli's August 10, 2009, decision is denied.  Relatedly, at the November 13, 2024, conference, Plaintiff asserted that the Court should decide, as a matter of New York law, whether the Town's method of serving summonses was permissible.  At the first trial, Plaintiff attempted to argue both that New York law prohibited the Town from serving these summonses using substituted service and that the Town's use of substituted service

1

was retaliatory. The only claim in this case is a First Amendment retaliation claim. The ultimate question of whether the method of service used by the Town was correct, as a matter of New York law, is not an issue in this case. This Court will not determine whether, as a matter of New York law, this method of service was proper. As explained in the Court's February 26, 2024, order on the post-trial motions, there was unrebutted testimony at the first trial that the Town had served summonses using substituted service for decades, including for the summonses Plaintiff received prior to engaging in protected speech. In light of that evidence, the Court ultimately refused to submit to the jury Plaintiff's claim that the Town's use of substituted service was retaliatory. Plaintiff has not pointed to any additional evidence that could establish that the Town's use of substituted service for Plaintiff's summonses was retaliatory. Accordingly, the Court will not ask the jury to determine whether the use of substitute service was retaliatory.

However, because Mangino's protected speech—including his letters—disputed the propriety of this method of service, the jury will still hear some evidence about the Town's method of service and Mangino's objections to that service. There will not, however, be a mini-trial on the propriety of service.

Judge Santorelli's August 10, 2009, decision is still relevant to Defendants' state of mind (and their alleged lack of retaliatory intent) because Town officials learned of Judge Santorelli's decision during the events in question.

### C. July 2009 Arrest Warrant

At the November 13, 2024, conference, Defendants argued that Plaintiff does not have a viable retaliation claim concerning the July 2009 arrest warrant because the state court was responsible for issuing the arrest warrant. Plaintiff claims that the Town's request for the July 2009 arrest warrant was retaliatory. At the last trial, this issue was submitted to the jury. The

2

Court will not, at this point, exclude evidence that the Town requested an arrest warrant in July 2009. The Court, however, questions whether there will be sufficient evidence to submit this claim to the jury. Similar to the substituted service issue, there was testimony at the first trial that arrest warrants were routinely sought by the Town when individuals failed to appear in court after being sent warning letters and that the July 2009 request for an arrest warrant was handled in the same manner as other arrest warrants, including Plaintiff's earlier arrest warrant. In light of that evidence, it seems doubtful that a reasonable jury could find that the Town's request for an arrest warrant was retaliatory. However, the Court will wait to see the evidence at trial on this issue.

The Court notes that even if there is insufficient evidence to establish that the Town's request for an arrest warrant was itself retaliatory, the July 2009 request for an arrest warrant might still be relevant to damages if Plaintiff can establish at trial that an antecedent event (such as the denial of the permit in April 2009) was retaliatory.

### D. Bifurcation

The Court already informed the parties that, as with the first trial, this case will be bifurcated. As with the first trial, Plaintiff may introduce evidence about the July 2009 request for an arrest warrant during the liability phase, but cannot reference Plaintiff's October 28, 2009, arrest during the liability phase of the trial.

### E. Final Policymakers Under Monell

Where, as here, the plaintiff contends that the actions at issue "were taken or caused by an official whose actions represent official policy, <u>the court must determine</u> whether that official had final policymaking authority <u>in the particular area involved</u>." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (emphasis added). "Thus, the court must 'ask whether [the] governmental official[

3

is a] final policymaker [ ] for the local government in a particular area, or on [the] particular issue' involved in the action." Id. (quoting McMillian v. Monroe County, 520 U.S. 781, 785 (1997)).

"Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law[]." Id. (cleaned up); see Agosto v. New York City Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020)  "[T]he relevant legal materials" courts consider "includ[e] state and local positive law, as well as custom or usage having the force of law." Jeffes, 208 F.3d at 57 (quoting Jett v. Dallas Independent School District, 491 U.S. 701, 737, (1989)).  The trial court determines whether a particular official is "a final policymaker under state law" Id.

Even if the parties ask the court to look beyond "positive law" and seek to rely on additional facts that might be relevant, the question of whether an official is a final policymaker is still one for the court to resolve. See Gros v. City of Grand Prairie, Tex., 181 F.3d 613, 616 (5th Cir. 1999); Wallace v. Powell, No. 3:09-CV-0291, 2012 WL 2590150, at *16 (M.D. Pa. July 3, 2012) (reserving judgment on whether individual had "'final policymaking' authority . . . until the evidence is submitted at trial due to the competing evidence presented in [the parties' summary judgment] motions.").

Ann Marie Jones, as Commissioner of the Planning Department, qualifies as a final policymaker with respect to permit denials and with respect to the issuance of summonses by building inspectors.

Paul Margiotta, as the Town Attorney, qualifies as a final policymaker with respect to requests for arrest warrants by the Town Attorney's Office and the initiation of civil suits.  For Plaintiff to prevail at trial based on Margiotta's role as a final policymaker, Plaintiff would ultimately have to establish that Margiotta either:  (1) personally ordered the alleged retaliatory act

4

and acted with retaliatory intent; or (2) ratified the retaliatory decision of a subordinate and the retaliatory basis for that decision. These theories, if supported by sufficient evidence at trial, would present questions of fact for the jury.

The parties dispute whether Joseph Wilson also qualifies as a final policymaker. Plaintiff argues that, both factually and legally, Wilson qualifies as a final policymaker. Again, whether an official is final policymaker is question of law for the Court to determine.

The Court must ultimately determine—based on positive law such as the Town Code and any facts that may also be relevant to this question—whether Wilson qualifies as a final policymaker. This question is not for the jury. Some of the testimony and evidence that might bear on this question may also be relevant to other issues at trial. To the extent that is the case, the parties may elicit that testimony before the jury even though the Court will ultimately make the final policymaker determination. To the extent the parties wish to introduce any testimony or evidence that is only relevant to the final policymaker issue, they can seek to introduce that evidence outside of the presence of the jury.

The Court is skeptical that the Town Code establishes that Wilson is a final policymaker. However, there is a seeming dearth of caselaw explicitly interpreting these provisions of the Babylon Town Code or the codes of similar municipalities concerning Deputy and Assistant Town Attorneys. While perhaps not necessary, evidence indicating that the Town Attorney, Paul Margiotta, set policies for the Town Attorney's Office, would seem to buttress the Town's argument that Wilson is not a final policymaker.

Plaintiff also asserts that, as a factual matter, Wilson established Town policy in September 2009 concerning the collection of back fees for rental permits and thus qualifies as a final policymaker for all relevant purposes. The Court is also skeptical of this argument on multiple

grounds. The Town Code indicates that the Town Attorney's Office provides "legal advice" to other departments and there are no provisions that empower the Town Attorney's Office to set policy for other departments. Additionally, the Court is skeptical of Plaintiff's theory as a factual matter given that Wilson also testified that he merely "suggested" and "advise[d]" the rental department to discontinue their policy of seeking back fees and to grant Mangino's permit. (Tr. 55, 133.)

To the extent any factual findings are necessary on the final policymaker question, that is for the Court to decide.

**SO ORDERED.**

Dated:  December 10, 2024
Central Islip, New York

                     /s/ (JMA)
                     JOAN M. AZRACK
                     UNITED STATES DISTRICT JUDGE